**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-cv-60567-BLOOM/Valle**


DANNY M. TARANTINO,

      Plaintiff,

v.

JEFFERY RIDDELL, *et al*.

      Defendants.

_____/


**ORDER GRANTING MOTION TO DISMISS**

    **THIS CAUSE** is before the Court upon the Motion to Dismiss Complaint filed by Defendants Jeffery Riddell, Sandra Munoz, and Gail Thompson (collectively, "Defendants") on September 6, 2017, ECF No. [25]. The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I.    BACKGROUND

    Plaintiff filed his Complaint, ECF No. [13] ("Complaint"), pursuant to Section 501(b) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501, *et seq*. ("LMRDA") on July 24, 2017. In his Complaint, Plaintiff alleges that Defendants violated Section 501(a) of the LMRDA by breaching their fiduciary duties to the Broward County Area Local-1201 of the American Postal Workers Union ("Union"). ECF No. [13] ¶ 1.

    Plaintiff is an employee of the United States Postal Service ("USPS") and a member of the Union. *Id.* ¶ 4. Defendants Riddell, Munoz, and Thompson serve as the President, Vice President, and Maintenance Craft Shop Steward, respectively, of the Union. *Id.* ¶ 5–7. The

events that precipitated this lawsuit began when Tarantino, who was certified by Defendant Riddell to serve as a representative for the maintenance craft in internal Union arbitrations, assisted in an overtime settlement for certain Union members working in the USPS Fort Lauderdale Main Office. *Id.* ¶¶ 9–10, 14 (the "Fort Lauderdale Settlement" or "Settlement"). While it is not clear from the allegations in the Complaint under what circumstances Tarantino and Defendant Thompson began discussing the Fort Lauderdale Settlement, Tarantino and Thompson apparently engaged in a "heated disagreement" about the potential compensation Thompson would receive as a result of the Settlement. *Id.* ¶¶ 15, 52–53. Plaintiff alleges that after this disagreement, Thompson "made numerous complaints" to Riddell and Munoz, and as a result Plaintiff was "decertified" from handling the Fort Lauderdale Settlement. *Id.* ¶¶ 16, 55. According to Plaintiff, after he was decertified, Riddell and Munoz "signed off on the [S]ettlement," which included certain payments to Thompson which Plaintiff did not believe that Thompson deserved. *Id.* ¶ 16.

Shortly thereafter, Plaintiff states that he "resigned" and requested information about the salaries of Riddell and Munoz. *Id.* ¶ 18. Tarantino alleges did not receive the requested salary information from the Union, but he did receive certain monthly financial reports. *Id.* ¶¶ 19–20. According to these reports, Riddell and Munoz received salaries from the Union while also performing some work for the "International Union." *Id.* ¶¶ 20, 25–29, 31–35. Plaintiff alleges both Riddell and Munoz, as salaried employees of the Union, may not perform any work that is not "for the benefit of the Local Union" and that performing work for the International Union is not part of their duties under the Union's constitution. *Id.* Plaintiff also alleges that Riddell and Munoz did not submit the "required Leave Without Pay slips" for the days when they performed

work for the International Union, resulting in both the Union and the International Union paying Riddell and Munoz for the same work. *Id.* ¶¶ 37–38, 40–41.

Based on this information, Plaintiff filed internal charges with the Union which were dismissed by a three member panel of the executive board. *Id.* ¶ 21. Subsequently, Plaintiff alleges he sent a "demand to sue to recover" letter and that no response was received. *Id.* ¶ 22. It is not alleged who Plaintiff sent this letter to or when it was sent.

In his Complaint, Plaintiff alleges nine causes of action. Counts I–IV allege that Riddell and Munoz violated Section 501 when they performed duties for both the Union and the International Union in violation of their fiduciary duties and were doubly compensated for that work. *Id.* ¶¶ 25–29, 31–35, 37–38, 40–41. Counts V–VI allege that Riddell and Munoz violated Section 501 when they failed to disclose their salaries. *Id.* ¶¶ 43, 45. Counts VII–VIII allege that Munoz and Riddell violated Section 501 by breaching their fiduciary duties to the Union when they signed off on the Fort Lauderdale Settlement. *Id.* ¶¶ 47, 49. Count IX, the only count against Thompson, alleges that Thompson violated Section 501 when she received compensation from the Fort Lauderdale Settlement. *Id.* ¶¶ 51–58.

While Defendants initially moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), within their Reply Defendants have withdrawn their 12(b)(1) arguments. ECF No. [30] at 1. Accordingly, the Court will only address Defendants' arguments under 12(b)(6), as well as Defendants' arguments regarding lack of service. Defendants do not move to dismiss Count III and only move to dismiss Count IV based upon a lack of service.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6).  To survive such a motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant–unlawfully-harmed-me accusation," meaning that a plaintiff is required to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–56).  Thus, while a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations."  *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

When considering a motion to dismiss, the Court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff.  *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).  Additionally, *pro se* pleadings, as before the Court here, are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); *see also Faulk v. City of Orlando*, 731 F.2d 787, 789–90 (11th Cir. 1984) ("A *pro se* complaint 'however inartfully pleaded must be held to 'less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

### III. ANALYSIS

#### A. Documents Considered by the Court

As a threshold matter, the Court first considers which portions of the record may be properly considered on this Motion. On March 20, 2017, Plaintiff filed a Request for Leave of Court to file his Complaint as required by statute. *See* ECF No. [1] ("Request"). Per Plaintiff's election, this Request was filed *ex parte*. *See id.* Plaintiff attached to the Request several exhibits which appear to be communications with Union officials and Union governing materials and financial records. *See* ECF No. [1-1]. However, when Plaintiff filed his Complaint, he attached none of these exhibits, and neither party has attached any of these exhibits—or any other documents—to the filings related to the Motion.

Typically, a Rule 12(b)(6) motion to dismiss must be decided without considering matters outside of or unattached to the complaint. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002). Under certain circumstances a court may consider documents that are attached to a complaint, incorporated in the complaint by reference, or attached to a motion to dismiss without converting that motion into a motion for summary judgment. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citation omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Specifically, the court may consider an extrinsic document if (1) it is central to a claim in the complaint and (2) its authenticity is unchallenged. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1054 n.12 (11th Cir. 2015).

Because the documents attached to the *ex parte* Request were never attached to the Complaint nor the Motion to Dismiss before the Court, the Court declines to consider them here, except to the extent that they are referenced by Defendants in their Motion. Moreover, after careful review of the Complaint, the Court is unable to determine whether these documents are

"central to a claim in the complaint" and whether their authenticity is unchallenged. Plaintiff is advised that upon filing of an amended complaint, Plaintiff shall attach only those documents which are "central to a claim in the complaint" so that any disputes regarding centrality and authenticity can be properly before the Court.

### B. Defendants' Motion to Dismiss All Claims Against Defendant Munoz for Failure to Provide Proof of Service

In their Motion to Dismiss, Defendants argue that Plaintiff has failed to effectuate service on Defendant Munoz pursuant to the Court's July 24, 2017 Order which gave Plaintiff until August 18, 2017 to complete service. *See* ECF No. [25] at 6; [16] at 1. In response, Plaintiff states that he filed a document entitled "Proof of Service" which attached a printout that "provided proof from the Sheriff's website that Defendant [Munoz] was served." ECF No. [27] at 2. Plaintiff further argues that "service was properly made by substitution as attempts were made to contract her before substitute service." *Id.*

Plaintiff originally filed his ex parte application to file a complaint pursuant to 29 U.S.C. § 501(b), ECF No. [1], on March 20, 2017. The Court granted Plaintiff leave to file his complaint by June 1, 2017, and when no complaint was timely filed nor cause shown, the Court dismissed the action without prejudice on June 27, 2017. ECF No. [9]. Upon Plaintiff's letter to the Court, ECF No. [10], the Court reopened this case and directed Plaintiff to file his Complaint and proposed summonses by July 28, 2017. ECF No. [11]. Plaintiff filed his Complaint against Defendants on July 24, 2017. ECF No. [13]. Summonses were issued as to Defendants Riddell, Munoz, and Thompson that same day. Plaintiff requested an extension of time to serve Defendants to August 18, 2017, which the Court granted. ECF Nos. [15] & [16]. On August 14, 2017, Plaintiff filed three documents: an executed summons as to Defendant Riddell averring Riddell was served on July 27, 2017 (ECF No. [17]), an executed summons as to Defendant

Thompson averring Thompson was served on July 27, 2017 (ECF No. [18]), and a document entitled "Proof of Service," which states regarding Defendant Munoz: "Plaintiff has not yet received receipt for Sandra Munoz but confirmed this by phone and submits proof from the Broward County Sheriff's website" (ECF No. [19]).  Plaintiff attached to this document a printout which appears to be from the website of the Broward County Sherriff's office reflecting a "Service of Process Inquiry" that Defendant Munoz was served on July 27, 2017 (the "Printout").  The Printout contains no additional information regarding service of Munoz.  Plaintiff has filed no other documents proving service of Munoz and has attached not such proof to his Opposition to the Motion.  ECF No. [27].

Under Federal Rule of Civil Procedure 4, "[u]nless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  Accordingly, service is proper when it conforms to the laws of the state where the district court is located or in which service is effectuated.  Here, Florida law applies.

Under Florida law, a return of service is valid if it states "the date and time when it comes to hand, the date and time when it is served, the manner of service, the name of the person on whom it was served and, if the person is served in a representative capacity, the position occupied by the person."  Fla. Stat. Ann. § 48.21(1).  Further, the return of service must be signed by the person effecting service, although a person employed by a sheriff may sign the return of service form using an electronic signature certified by the sheriff.  *Id.*  "A failure to state the facts or to include the signature required by subsection (1) invalidates the service, but

the return is amendable to state the facts or to include the signature at any time on application to the court from which the process issued." *Id.* § 48.21(2).

The Court strictly construes statutes that govern service of process. *Carcamo v. Norgas Carriers AS*, No. 09-81468-CIV-MARRA, 2010 WL 2926035, at *3 (S.D. Fla. July 23, 2010) (collecting cases). This is because "[s]ervice of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008). The burden of proving the validity of the service of process is on the party asserting jurisdiction. *Id.* "This burden requires the party to demonstrate that the return of service is, under [S]ection 48.21, facially valid or regular on its face." *Koster v. Sullivan*, 160 So. 3d 385, 389 (Fla. 2015) (citing *Re–Emp't Servs., Ltd. v. Nat'l Loan Acquisitions Co.,* 969 So. 2d 467, 472 (Fla. 5th DCA 2007)). Florida courts rely on both the return of execution of process statute—Section 48.21—and the general service of process statutes—Sections 48.031 and 48.081—in determining whether a return is regular on its face. *Romeo v. U.S. Bank Nat. Ass'n*, 144 So. 3d 585, 587 (Fla. 4th DCA 2014) (citations omitted). "A return of service that is regular on its face must include the statutory factors contained in [S]ection 48.21." *Koster*, 160 So. 3d at 389. "If the return of service is regular on its face, service of process is presumed to be valid and the burden then shifts to the party challenging service to rebut the presumption with clear and convincing evidence. However, if the return is defective on its face, then the return is not evidence of service and the party seeking to invoke the court's jurisdiction must present evidence to show effective service of process." *Id.*

The Printout does not comply with the statutory requirements for proof of service under Florida law. While it does contain the date on which Defendant Munoz was allegedly served, the

Printout does not contain the any of the other information required by Section 48.21(1), nor does it comply with that section's signature requirement. Fla. Stat. Ann. § 48.21(1). Accordingly, service as to Defendant Munoz is invalid. *Peoples v. Expert Sales & Serv. Corp.*, No. 07-14389-CIV, 2008 WL 2637426, at *1 (S.D. Fla. July 3, 2008) (dismissing without prejudice when no returns of service were filed); *West v. DLJ Mortg. Capital, Inc.*, No. 8:09-CV-354-T-27TBM, 2009 WL 10671082, at *1 (M.D. Fla. Aug. 7, 2009) (same); *Romeo*, 144 So. 3d at 587–88 (reversing denial of motion to quash because affidavits were defective on their face); *Brown v. U.S. Bank Nat. Ass'n*, 117 So. 3d 823, 824 (Fla. 4th DCA 2013) (finding service invalid for failing to contain all information in the return of service as required by statute); *Johnston v. Halliday*, 516 So. 2d 84, 85 (Fla. Dist. Ct. App. 1987) (same). Accordingly, all claims as to Defendant Munoz are dismissed without prejudice pending filing of amended return of service compliant with Section 48.21(1).

### C. Defendants' Motion to Dismiss the Section 501 Claims for Failure to State a Claim as to All Defendants

#### 1. The LMRDA

Congress passed the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") in response to "concern with widespread abuses of power by union leadership." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 536 (1984). Section 501 of the LMRDA sets out the fiduciary responsibilities of labor organization officials and establishes a cause of action against officers who breach those obligations. 29 U.S.C. § 501 (2012). In particular, the LMRDA states that since officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust, they have a duty to:

> hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any

9

> resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

*Id.* § 501(a). The LMRDA authorizes an individual member of a labor organization to sue any officer who violates these fiduciary duties:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

*Id.* § 501(b). The LMRDA thus "imposes fiduciary responsibility in its broadest sense, and is not confined to financial dealings by [a] union official; union members are owed the loyal, faithful, and honest services of their union official." *United States v. Browne*, 505 F.3d 1229, 1266 (11th Cir. 2007) (quoting *United States v. Boffa*, 688 F.2d 919, 930–31 (3d Cir. 1982) (internal quotations omitted)).

"Nevertheless, in drafting [S]ection 501, Congress did not intend to give courts a license to interfere broadly in internal union affairs and it is not an invitation for courts to substitute their judgment on how a union should be managed." *Tarantino v. Ford*, No. 07-20397-CIV-LENARD, 2011 WL 6219503, at *6 (S.D. Fla. May 31, 2011) (quoting *Council 49, Am. Fed'n of State, Cty. & Mun. Emps. Union AFL-CIO by Adkins v. Reach*, 843 F.2d 1343, 1347 (11th Cir. 1988) (internal quotation marks and citations omitted). "A union official fulfills his fiduciary

duty, even though he may indirectly benefit from use of union funds, whenever he can show that the funds were authorized by the union and were expended for the benefit of the union." *Erkins v. Bryan*, 785 F.2d 1538, 1544 (11th Cir. 1986) (citations omitted). Thus, if certain uses of union funds have been authorized in accordance with the union's governing documents, "a court will typically not have cause to review the reasonableness of the decision." *Council 49*, 843 F.2d at 1347 (quoting *Ray v. Young*, 753 F.2d 386, 390 (5th Cir. 1985) (internal quotation marks omitted).

However, "[w]here a union officer personally benefits from union funds, a court in a [S]ection 501 suit may determine whether the expenditure of funds, notwithstanding its authorization, is so manifestly unreasonable as to evidence a breach of fiduciary duty." *Council 49*, 843 F.2d at 1347. "[I]n situations where an expenditure of union funds is unauthorized or where a union official has directly benefitted, judicial deference is not required and courts are free to determine whether an expenditure was so unreasonable as to constitute a breach of fiduciary duty under [S]ection 501." *Hearn v. McKay*, No. 07-60209-CIV, 2008 WL 2694005, at *6 (S.D. Fla. July 1, 2008), *aff'd*, 603 F.3d 897 (11th Cir. 2010) (quoting *Council 49*, 843 F.2d at 1347) (quotation marks omitted); *see also Erkins*, 785 F.2d at 1544 (affirming district court's finding of Section 501 violation when defendants' overcompensation for trip expenses were "significantly above a fair range of reasonableness" (quoting *Morrissey v. Curran*, 650 F.2d 1267, 1275 (2d Cir. 1981))); *Ray*, 753 F.2d at 386 (finding double reimbursement for expenses voids any union authorization and requires reimbursement).

Within this framework, the Court now turns to sufficiency of the allegations. For completeness and to provide sufficient direction to *pro se* Plaintiff Tarantino, the Court will

address the sufficiency of the allegations for all the counts that Defendants have moved to dismiss under 12(b)(6).

### 2. Counts I and II

In the Motion, Defendants argue that Counts I and II do not state a claim under Section 501 because the statue does not provide a cause of action for union members who are dissatisfied with the work ethic or work schedule of union officials. While Section 501 may not provide a cause of action for a union member's dissatisfaction with the work performance of union officials, it does allow for a Court to examine the use of union funds that allegedly violate Union policies or, even if they do not violate Union policies, are manifestly unreasonable. *Council 49*, 843 F.2d at 1347.

In support of their argument to dismiss these counts, Defendants cite to *Hoffman v. Kramer*, 362 F.3d 308, 322 (5th Cir. 2004). *Hoffman* observes that "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA." *Hoffman v. Kramer*, 362 F.3d 308, 322 (5th Cir. 2004). However, based on the allegations of the Complaint, Plaintiff appears to allege not just that Defendants performed their duties in a manner that he did not agree with, but rather that they were not permitted to perform work for the International Union at all. However, beyond these conclusory statements, Plaintiff has not sufficiently pled how the actions of Riddell and Munoz violated Union polices or were manifestly unreasonable. Accordingly, Counts I and II are dismissed without prejudice and with leave for Plaintiff to replead those counts.

### 3. Counts V and VI

Counts V and VI allege that Riddell and Munoz violated Section 501 by failing to provide salary information to Plaintiff. These counts must also be dismissed without prejudice. Based on the allegations in the Complaint, it is unclear what salary information Plaintiff is seeking and what information, if any, the Union provided to Plaintiff. Moreover, even if there is additional information that Plaintiff seeks, courts in our sister circuits have found that Section 501 does not create a cause of action based on the lack of production of records. *See Gabauer v. Woodcock*, 594 F.2d 662, 668 (8th Cir. 1979); *Glover v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.)*, No. 92 C 5873, 1993 WL 369336, at *8 (N.D. Ill. Sept. 20, 1993) ("[Section] 501 does not provide a cause of action for officers seeking financial records alleging that they were consequently not allowed to fulfill a fiduciary duty for which they might potentially be sued by members under § 501."). While Plaintiff may have a claim under other provisions of the LMRDA or other Florida statutes for the records he seeks, based on the allegations in the Complaint, Section 501 does not provide him with such a cause of action. Accordingly, Counts V and VI are dismissed without prejudice.

### 4. Counts VII, VII, and IX

Counts VII, VII, and IX allege that Defendants mismanaged a settlement that Plaintiff was originally handling by removing Plaintiff from the Fort Lauderdale Settlement negotiations, subsequently finalizing the Fort Lauderdale Settlement, and distributing the funds in a manner that Plaintiff did not agree with. ECF No. [13] ¶¶ 47, 49, 51–58. Defendants make several arguments in favor of dismissal of these counts. First, Defendants argue that the Court must dismiss these claims because the money in question is not the "Union's" but rather is proceeds collected by the Union through a grievance settlement which were subsequently distributed to

Union members.  In support of this argument, Defendants cite to authority finding no Section 501 claim based on allegations of mishandling of union pension plans.  However, the unique circumstances of a pension plan are not applicable here.  For example, in *Hern v. McKay*, plaintiffs alleged that defendants breached their duties under Section 501 based on allegations that they aided and abetted certain union officials who were ultimately indicted for theft and embezzlement of funds from an ERISA plan.  No. 07-60209-CIV, 2008 WL 2694005, at *1 (S.D. Fla. July 1, 2008), *aff'd*, 603 F.3d 897 (11th Cir. 2010).  The Court granted summary judgment on the Section 501 claim, noting that "the funds in these plans are not union money or property but rather the property of the plans or trusts, and the trustees of these trusts are subject to their own fiduciary requirements under the Employment Retirement Income Security Act of 1974 . . . ."  *Id.* at *4.  As such, "by allegedly misusing the funds of these trusts, at times it appears for the benefit of the union, Defendants would have breached their duty to the trusts under ERISA, not their duty to the union under [S]ection 501."  *Id.*

Similarly, in *Yager v. Carey*, the district court granted summary judgment on a Section 501 claim that alleged defendants engaged in self-dealing with respect to the union's pension plan, reasoning that since "Section 501 only applies to activities affecting union money" and "the money in the Plan was no longer the property of the union, plaintiffs have no standing to raise this claim." 910 F. Supp. 704, 728 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998).  Neither of these cases is applicable to Plaintiff's claims here regarding the Settlement funds.

Second, Defendants argue that Counts VII, VII, and IX must be dismissed because Section 501 does not recognize a cause of action for alleged mishandling of a grievance process. However, the cases cited in support of this argument are distinguishable.  Each analyzes the applicability of Section 501 to an individual union member's dissatisfaction with the

adjudication of *his or her own claim* through the union grievance process. The *Slavich* Court declined to allow a motion to amend to add a Section 501 claim based on an individual union member's dissatisfaction with the result of the union's resolution of his own grievance. *Slavich v. Local Union No. 551, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, No. 84 C 454, 1986 WL 6957, at *3 (N.D. Ill. June 13, 1986). Similarly, in *Shepherd*, the district court found that plaintiff could not state a cause of action under Section 501 for the union's failure to properly handle plaintiff's individual retaliation and wrongful termination claim. *Shepherd v. AT&T*, No. 93 C 3255, 1994 WL 1860804, at *4 (N.D. Ill. May 9, 1994), *aff'd sub nom. Shepherd v. Am. Tel. & Tel.*, 70 F.3d 1274 (7th Cir. 1995). As noted in *Slavich*, "the focus of section 501 is on an officer's breach of his fiduciary duty to the union, not to the individual member. Thus, [S]ection 501 endorses actions wherein an individual member seeks relief from improper action on behalf of the union. Any relief obtained by the plaintiff should benefit the union as a whole, and not the suing individual directly." 1986 WL 6957, at *3. Here, however, Tarantino alleges claims not based on a personal grievance but on behalf of the Union, claiming that funds from the Settlement were misallocated for a group of workers—a group which does not include Tarantino himself.

Third, Defendants argue that Plaintiff may have a claim for "mishandling of a grievance" under Section 301 of the National Labor Management Relations Act (ECF No. [30] at 5), but he does not have such a claim under Section 501. However, the Court need not delve into this argument today because Plaintiff does not presently bring claims under that Act.

While the Court declines to apply these three arguments made by Defendant in favor of dismissal, the Court agrees with Defendant that, as currently pleaded, simple "disagreement with the way his union settled a collective bargaining grievance does not give rise to a cause of action

under the LMRDA. ECF No. [25] at 9. Beyond the conclusory statements of alleging mismanagement and voicing Plaintiff's view that Thompson did not deserve certain payments from the Settlement, Plaintiff has not sufficiently pled how the actions of Riddell, Munoz, and Thompson violated Union polices or were manifestly unreasonable. Accordingly, Counts VII, VII, and IX are dismissed without prejudice.

## IV. CONCLUSION

In light of the Eleventh Circuit's policy of construing *pro se* complaints liberally and permitting amendments to facilitate adjudication of claims on the merits, *Toenniges v. Warden*, 672 F. App'x 889, 891 (11th Cir. 2016), the Court will afford Plaintiff an opportunity to amend his Complaint. Plaintiff is instructed to allege facts that will allow the Court to understand his claims and to, in particular, explain what provisions of the Union protocols or rules were violated and describe the conduct that caused those alleged violations. Plaintiff is reminded that all facts he wishes the Court to consider must be pled in his amended complaint or attached as exhibits to the amended complaint. Facts asserted for the first time in any other document—such as an opposition to a motion to dismiss—will not be considered by the Court in analyzing the sufficiency of the pleadings.

Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [25]**, is **GRANTED.**

2. Plaintiff's Complaint, **ECF No. [13]**, is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff shall **FILE** his amended complaint by no later than **December 7, 2017**. Any documents that Plaintiff believes should be considered in support of his

amended complaint should be **FILED AS ATTACHMENTS** to the amended complaint.

4.     Plaintiff shall **FILE** the return of service evidencing service upon Defendant Munoz by **November 27, 2017.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of November, 2017.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Danny M. Tarantino
3940 North 56th Avenue
Bldg 4
Apt 212
Hollywood, FL 33021