# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-60567-BLOOM/Valle

DANNY M. TARANTINO,

    Plaintiff,

v.

JEFFERY RIDDELL, *et al*.

    Defendants.

_____/

## ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon the Motion to Dismiss Amended Complaint filed by Defendants Jeffery Riddell and Sandra Munoz (together, "Defendants") on January 2, 2018, ECF No. [56] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised.

### I.    PROCEDURAL BACKGROUND

Plaintiff initially filed his Complaint, ECF No. [13], pursuant to Section 501(b) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 501, *et seq*. ("LMRDA") on July 24, 2017. On November 20, 2017, the Court granted Defendants Jeffery Riddell and Sandra Munoz and then-Defendant Gail Thompson's motion to dismiss with the following instructions:

> In light of the Eleventh Circuit's policy of construing *pro se* complaints liberally and permitting amendments to facilitate adjudication of claims on the merits, *Toenniges v. Warden*, 672 F. App'x 889, 891 (11th Cir. 2016), the Court will afford Plaintiff an opportunity to amend his Complaint. Plaintiff is instructed to allege facts that will allow the Court to understand his claims and to, in particular, explain what provisions of the Union protocols or rules were violated and describe the conduct that caused those alleged

> violations. Plaintiff is reminded that all facts he wishes the Court to consider must be pled in his amended complaint or attached as exhibits to the amended complaint. Facts asserted for the first time in any other document—such as an opposition to a motion to dismiss—will not be considered by the Court in analyzing the sufficiency of the pleadings.

ECF No. [42] at 16. Heeding to the Court's admonitions, Plaintiff filed his Amended Complaint, ECF No. [48] ("Amended Complaint") on December 5, 2017, substantially revising factual allegations, defendants, and causes of action. The Amended Complaint alleges two causes of action, one against Defendant Jeffery Riddell and one against Defendant Sandra Munoz,[1] for violations of Section 501(a) of the LMRDA. ECF No. [48] ¶ 1.

## II.   FACTUAL BACKGROUND

Plaintiff is an employee of the United States Postal Service ("USPS") and a member of the Broward County Area Local-1201 of the American Postal Workers Union ("Local Union"). *Id.* ¶ 4. Defendants Riddell and Munoz serve as the General President and Vice President, respectively, of the Local Union. *Id.* ¶ 5–6. The Local Union pays their full time, annual salary. *Id.*; *see also* ECF No. [56-2] Article X, Section 1. In addition to their full time work as General President and Vice President, Defendants also occasionally perform hourly work for the national union, which Plaintiff refers to as "International," for which they are paid an hourly rate. ECF No. [48] ¶¶ 17–18, 28–29. Plaintiff alleges that International and Local Union policy requires Defendants to be on a leave status, such as leave without pay ("LWOP") or annual leave, while performing this hourly work for International. *Id* ¶¶ 20–23; 31–34; *see also* ECF No. [48-1] and [56-3] § 7.02). In the Amended Complaint, Plaintiff states that Defendants "double dipped" in violation of Section 501(a) when they received hourly pay from International for work as a

---

[1] Previously-named defendant Gail Thompson is no longer a party to the action. *See* ECF No. [48].

designated representative ("Advocate") and/or for other national assignments, while simultaneously receiving compensation as full time, salaried officers of the Local Union. *Id.* ¶¶ 14–15, 18–19; 25–26, 29.

In support of these allegations, Plaintiff attaches several documents to his Amended Complaint: (1) the Local Union's Profit and Loss Statements which reflect Defendants' salaries from February 2015 to September 2016, ECF No. [48-1] at 2–21; (2) International's Travel and Expense Reimbursement Policy for Designated Representatives and Committee Members dated October 29, 2015, *id.* at 22–34;[2] (3) an email from John Gearhard forwarding an email from Val Singleton, entitled "APWU Advocate Forms Needed for Reimbursement" dated September 29, 2016, *id.* at 35; (4) a portion of what appears to be the Local Union's Constitution, dated January 2016,[3] *id.* at 36–39; and an affidavit of Plaintiff, *id.* at 40–42.

Of these documents, the Reimbursement Policy is central to the allegations in the Amended Complaint. Article I, Section 1.02 of the Reimbursement Policy entitled "Arbitration Advocates Payment Policy" specifies several policies for reimbursement for Advocates. The first line of Section 1.02 states "Refer to President Mark Dimondstein's letter dated January 2, 2014 (attached)." ECF Nos. [48-1] and [56-3] § 1.02. This letter, attached to Defendants' version of the Reimbursement Policy, *cf.* ECF Nos. [48-1] and [56-3], states: "All reimbursements for advocate services performed will be reimbursed eight hours for preparation

---

[2] Defendants state in their Motion that they have attached a full copy of the Reimbursement Policy, which includes a letter from International's President Mark Dimondstein entitled "Payment Policy for Arbitration Advocates" dated January 2, 2014, ECF No. [56-3]. The Reimbursement Policy refers directly to the letter and thus the Court considers the reimbursement policy to include both the policy and the letter (together, "Reimbursement Policy"). Because the Reimbursement Policy is integral to the allegations of the Amended Complaint, the Court considers it without converting the Motion to a motion for summary judgment. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1054 n.12 (11th Cir. 2015).

[3] Defendants state in their Motion that they have attached a full copy of the Constitution, ECF No. [56-2].

time and eight hours for the hearing. Advocate requests for reimbursement for preparation or hearing will not require proof of leave (Form 3971) for payment, but will require the notation of case number, arbitration and date of hearing and certification that a full hearing was conducted for payment of eight hours for the hearing." ECF No. [56-3] at 14.

Article VII – Compensation of the Reimbursement Policy contains Section 7.02 Hours (Salary) – For Fulltime Local/State Officers. *See* ECF No. [48-1] at 34; [56-3] at 13. Section 7.02 states:

> To be paid by the national union, a fulltime local or state officer on a national APWU assignment (field or headquarters) **must submit a letter from their local or state secretary/treasurer that they are or were in a LWOP or annual leave status from their local or state position, while on such assignment**. No fulltime local or state officer will be paid for work on behalf of the national union without submission of said letter or while on sick leave.

*See* ECF No. [48-1] at 34; [56-3] at 13. Based on these facts, Plaintiff alleges that Defendants violated Section 501(a) when they were paid by International for time while not on leave in violation of the Reimbursement Policy.

Defendants move to dismiss on two grounds. ECF No. [56]. First, Defendants argue that the Local Union policy allows them to collect a full time salary while simultaneously receiving hourly pay from International since "the[Reimbursement Policy] does not require that they take leave without pay from their positions with the [Local Union] in order to receive compensation." *Id.* at 5–7. Thus, Defendants argue, because their conduct is sanctioned by the Local Union, there can be no Section 501(a) violation. *Id.* Second, Defendants argue that the exception which allows for Court review of a union official's conduct—even when consistent with union policies—does not apply since the Reimbursement Policy is not "manifestly unreasonable."

Accordingly, Defendants argue that Plaintiff fails to state a claim and the Amended Complaint must be dismissed.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive such a motion, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant–unlawfully-harmed-me accusation," meaning that a plaintiff is required to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–56). Thus, while a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

When considering a motion to dismiss, the Court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). Additionally, *pro se* pleadings, as before the Court here, are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003); *see also Faulk v. City of Orlando*, 731 F.2d 787, 789–90 (11th Cir. 1984) ("A *pro se* complaint 'however inartfully

pleaded must be held to 'less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

## IV. ANALYSIS

Congress passed the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") in response to "concern with widespread abuses of power by union leadership." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 536 (1984). Section 501 of the LMRDA sets out the fiduciary responsibilities of labor organization officials and establishes a cause of action against officers who breach those obligations. 29 U.S.C. § 501 (2012). In particular, the LMRDA states that since officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust, they have a duty to:

> hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

*Id.* § 501(a). The LMRDA authorizes an individual member of a labor organization to sue any officer who violates these fiduciary duties:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover

> damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

*Id.* § 501(b). The LMRDA thus "imposes fiduciary responsibility in its broadest sense, and is not confined to financial dealings by [a] union official; union members are owed the loyal, faithful, and honest services of their union official." *United States v. Browne*, 505 F.3d 1229, 1266 (11th Cir. 2007) (quoting *United States v. Boffa*, 688 F.2d 919, 930–31 (3d Cir. 1982) (internal quotations omitted)).

"Nevertheless, in drafting [S]ection 501, Congress did not intend to give courts a license to interfere broadly in internal union affairs and it is not an invitation for courts to substitute their judgment on how a union should be managed." *Tarantino v. Ford*, No. 07-20397-CIV-LENARD, 2011 WL 6219503, at *6 (S.D. Fla. May 31, 2011) (quoting *Council 49, Am. Fed'n of State, Cty. & Mun. Emps. Union AFL-CIO by Adkins v. Reach*, 843 F.2d 1343, 1347 (11th Cir. 1988) (internal quotation marks and citations omitted). "A union official fulfills his fiduciary duty, even though he may indirectly benefit from use of union funds, whenever he can show that the funds were authorized by the union and were expended for the benefit of the union." *Erkins v. Bryan*, 785 F.2d 1538, 1544 (11th Cir. 1986) (citations omitted). Thus, if certain uses of union funds have been authorized in accordance with the union's governing documents, "a court will typically not have cause to review the reasonableness of the decision." *Council 49*, 843 F.2d at 1347 (quoting *Ray v. Young*, 753 F.2d 386, 390 (5th Cir. 1985) (internal quotation marks omitted).

However, "[w]here a union officer personally benefits from union funds, a court in a [S]ection 501 suit may determine whether the expenditure of funds, notwithstanding its authorization, is so manifestly unreasonable as to evidence a breach of fiduciary duty." *Council 49*, 843 F.2d at 1347. "[I]n situations where an expenditure of union funds is unauthorized or

7

where a union official has directly benefitted, judicial deference is not required and courts are free to determine whether an expenditure was so unreasonable as to constitute a breach of fiduciary duty under [S]ection 501." *Hearn v. McKay*, No. 07-60209-CIV, 2008 WL 2694005, at *6 (S.D. Fla. July 1, 2008), *aff'd*, 603 F.3d 897 (11th Cir. 2010) (quoting *Council 49*, 843 F.2d at 1347) (quotation marks omitted); *see also Erkins*, 785 F.2d at 1544 (affirming district court's finding of Section 501 violation when defendants' overcompensation for trip expenses were "significantly above a fair range of reasonableness" (quoting *Morrissey v. Curran*, 650 F.2d 1267, 1275 (2d Cir. 1981))); *Ray*, 753 F.2d at 386 (finding double reimbursement for expenses voids any union authorization and requires reimbursement). Within this framework, the Court now turns to sufficiency of the allegations.

As noted above, Defendants first argue that Counts I and II do not state a claim under Section 501 because "(1) none of the documents submitted by the Plaintiff prohibit the Defendants from performing, as Plaintiff calls it, 'work for the International' and (2) under the Travel and Expense Reimbursement Policy, Defendants were not required to submit leave without pay slips when acting as arbitration advocates." ECF No. [56] at 3. According to Defendants, nothing in the International or Local Union's governing documents prohibits Defendants from acting as an Advocate while also serving as a fulltime officer for the Local Union. *Id.* at 4–5. However, Plaintiff does not dispute this. ECF No. [57] at 2. Rather, Plaintiff alleges that that under Section 7.02 Hours (Salary) – Fulltime Local/State Officers of the Reimbursement Policy, the Local Union does not allow Defendants "to do work for the International and receive pay by the International while not taking [LWOP] from the [Local Union]." ECF No. [57] at 2–3. In response to this allegation, Defendants state that Section 7.02 does not apply to arbitrations, and that the Court should only look to Section 1.02 which states,

8

by reference to the Dimondstein letter, that Defendants are not required to submit proof of leave in order to receive reimbursement from International for arbitrations. ECF No. [56-3] at 14.

Taking plaintiffs factual allegations as true and construing inferences in Plaintiff's favor, the Motion must be denied. A contract is ambiguous when it "fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1310 (11th Cir. 1998). Interpretation of ambiguous contracts at the motion to dismiss stage is generally inappropriate since it requires a court to examine facts and "make determinations based on what one party believes the language of the contract to say." *Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL 1270266, at *5 (M.D. Fla. Apr. 1, 2010); *see also Larach v. Standard Chartered Bank Int'l. (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (denying motion to dismiss and noting that the differing interpretations of the contract was not yet ripe for ruling); *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 09-82280-CIV, 2010 WL 2162902, at *3 (S.D. Fla. May 26, 2010) (finding settlement agreement ambiguous and denying motion to dismiss); *Ventana Hotels & Resorts, LLC v. Habana Libre Hotel, LLC*, No. 0622993-CIV-MCALILEY, 2007 WL 2021940, at *2 (S.D. Fla. July 11, 2007) (citing *Pope v. Winter Park Healthcare Grp., Ltd.*, 939 So.2d 185, 191 (Fla. 5th DCA 2006); *Barone v. Rogers*, 930 So.2d 761, 764 (Fla. 4th DCA 2006)) (denying motion to dismiss).

The Reimbursement Policy is fairly susceptible to more than one construction regarding the leave requirements, if any, applicable to Defendants when they conduct arbitrations or other assignments for the International. Defendants ask the Court to interpret the terms of the Reimbursement Policy in their favor and dismiss Plaintiff's Amended Complaint. But this

9

request defies the standard applicable on a motion to dismiss because it requires the Court to make a factual determination regarding an ambiguous policy that, by its plain language, contains contradictory provisions. *Elof Hansson Paper & Bd., Inc. v. Caldera*, No. 11-20495-CIV, 2011 WL 13115561, at *4 (S.D. Fla. Sept. 6, 2011) (declining to adopt Defendants' contract interpretation on a motion to dismiss and denying the motion). While Defendants correctly argue that a court will generally not second-guess a union's well-articulated policies or internal procedures, *see* ECF No. [56] citing *Hoffman v. Kramer*, 362 F.3d 308, 322 (5th Cir. 2004) (finding "disagreements over the wisdom or appropriateness of particular administrative and employment actions and decisions are usually not amenable to suit under the LMRDA"), here, Defendants ask the Court to adopt their interpretation of ambiguous terms as a matter of law and discredit Plaintiff's well-plead allegations.[4] This the Court will not do.

## V. CONCLUSION

Taking the well-plead allegations in the Amended Complaint as true and construing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to survive Defendants' Motion. Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [56]**, is **DENIED.**

2. Defendants shall **FILE** their answer on or before **May 7, 2018**.

---

[4] Neither of the two cases cited by Defendants apply the deference Defendants urge at the motion to dismiss stage. *Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir. 1986) (noting the court "must give deference to the union's interpretation of its own constitution [and c]ourts should strive to avoid interference with internal union affairs" in affirming trial court's findings after a bench trial); *Dep't of Labor v. Aluminum, Brick & Glass Workers Int'l Union, Local 200*, 941 F.2d 1172, 1177 (11th Cir. 1991) (on summary judgment, noting that "[t]he union's interpretation of its own documents will be respected only to the extent it is fair and reasonable" when the union's definition of "member in good standing" conflicted with the LMNRA's definition of the same term).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of April, 2018.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Danny M. Tarantino
3940 North 56th Avenue
Bldg 4
Apt 212
Hollywood, FL 33021